No. 23-50194

# In the United States Court of Appeals for the Fifth Circuit

ROBERT ANTHONY ZARAGOZA,
*Plaintiff-Appellant,*

v.

UNION PACIFIC RAILROAD COMPANY,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Texas, El Paso
Case No. 3:21-cv-287 (The Hon. Kathleen Cardone)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

JAMES H. KASTER
LUCAS J. KASTER
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th St.
Minneapolis, MN 55402
(612) 256-3200

MATTHEW W.H. WESSLER
LINNET R. DAVIS-STERMITZ
GUPTA WESSLER LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
matt@guptawessler.com

JESSICA GARLAND
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336

September 1, 2023

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant**

Robert Anthony Zaragoza

**Counsel for Plaintiff-Appellant**

Matthew W.H. Wessler; Linnet R. Davis-Stermitz; Jessica Garland; Lucas J. Kaster; James H. Kaster; Gavin S. Barney; Anthony S. Petru; Gupta Wessler PLLC; Nichols Kaster, PLLP; Hildebrand, McLeod & Nelson, LLP

**Defendant-Appellee**

Union Pacific Railroad Company

**Counsel for Defendant-Appellee**

Robert Lee Ortbals, Jr.; Katherine M. Rhoten; Lara Cardin de Leon; Jasmine L. Anderson; Constangy, Brooks, Smith & Prophete, LLP


Dated: September 1, 2023                    */s/ Matthew W.H. Wessler*
                                            Matthew W.H. Wessler

# TABLE OF CONTENTS

Certificate of interested persons ................................................................i

Table of authorities ................................................................................iii

Introduction.............................................................................................1

Argument.................................................................................................2

    I.    Mr. Zaragoza should not be deprived of *American Pipe* tolling on the grounds that the *Harris* class was narrowed ................................... 2

    II.    Union Pacific's merits arguments are best left to the district court on remand, but in any event, they fail........................................14

        A.    Union Pacific isn't entitled to summary judgment on Mr. Zaragoza's disparate-treatment claim .......................................15

        B.    Union Pacific isn't entitled to summary judgment on Mr. Zaragoza's disparate-impact claim ...........................................21

Conclusion............................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*A Helping Hand, LLC v. Baltimore County,*
  515 F.3d 356 (4th Cir. 2008)................................................................ 21

*American Pipe & Construction Co. v. Utah,*
  414 U.S. 538 (1974)...............................................................2, 4, 5

*AT & T Corp. v. Hulteen,*
  556 U.S. 701 (2009)..............................................................16

*Atkins v. Salazar,*
  677 F.3d 667 (5th Cir. 2011) ..............................................18, 19

*Bates v. United Parcel Service, Inc.,*
  511 F.3d 974 (9th Cir. 2007)...............................................18, 19

*Chevron U.S.A. Inc. v. Echazabal,*
  536 U.S. 73 (2002) ................................................................18

*Clark v. Champion National Security, Inc.,*
  952 F.3d 570 (5th Cir. 2020) ..........................................16, 17

*Communities for Equity v. Michigan High School Athletic Association,*
  459 F.3d 676 (6th Cir. 2006)..............................................16

*Crown, Cork & Seal Co. v. Parker,*
  462 U.S. 345 (1983)...........................................................2, 4

*Doe v. County of Centre, Pennsylvania,*
  242 F.3d 437 (3d Cir. 2001) ..............................................16

*E.E.O.C. v. E.I. Du Pont de Nemours & Co.,*
  480 F.3d 724 (5th Cir. 2007) ..............................................17

*Flores v. FS Blinds, L.L.C.,*
  73 F.4th 356 (5th Cir. 2023) ..............................................14

*Hamlin v. Charter Township of Flint,*
  165 F.3d 426 (6th Cir. 1999) ..............................................18

*Harris v. Union Pacific Railroad Co.*,
   329 F.R.D. 616 (D. Neb. 2019) ......................................................................... *passim*

*Harris v. Union Pacific Railroad Co.*,
   953 F.3d 1030 (8th Cir. 2020) .................................................................... 19

*In re Syntex Corp. Securities Litigation*,
   95 F.3d 922 (9th Cir. 1996) ........................................................................ 6

*Kitchen v. BASF*,
   952 F.3d 247 (5th Cir 2020) ....................................................................... 17

*Montano v. Texas*,
   867 F.3d 540 (5th Cir. 2017) ...................................................................... 14

*Nall v. BNSF Railway Co.*,
   917 F.3d 335 (5th Cir. 2019) ...................................................................... 17

*Owen v. Union Pacific Railroad Co.*,
   2020 WL 6684504 (D. Neb. Nov. 12, 2020) ............................................. 9

*Rodriguez v. ConAgra Grocery Products Co.*,
   436 F.3d 468 (5th Cir. 2006) ..................................................................... 15

*Rohr v. Salt River Project Agricultural Improvement & Power District*,
   555 F.3d 850 (9th Cir. 2009) ...................................................................... 19

*Sawtell v. E.I. du Pont de Nemours & Co.*,
   22 F.3d 248 (10th Cir. 1994) ................................................................... 5, 6

*Smith v. Pennington*,
   352 F.3d 884 (4th Cir. 2003) ................................................................ 5, 6, 7

*Tesone v. Empire Marketing Strategies*,
   942 F.3d 979 (10th Cir. 2019) .................................................................... 16

*Trans World Airlines, Inc. v. Thurston*,
   469 U.S. 111 (1985) ................................................................................... 16

## Statutes

42 U.S.C. § 12102 ..................................................................................... 21

**Regulations**

49 C.F.R. § 240.409 ............................................................................. 20

49 C.F.R. § 242.117 ............................................................................. 20

49 C.F.R. § 242.509 ............................................................................. 20

**INTRODUCTION**

Union Pacific tries move after move to avoid what was clear to everyone in the *Harris* class action: Robert Zaragoza was a member of the *Harris* class when the *Harris* action was first filed, through class certification, and up until the Eighth Circuit decertified the class.

Despite this, the company asks this Court to hold that the named plaintiffs' class-certification motion in *Harris* somehow narrowed the class to exclude Mr. Zaragoza from the class, and thus from any entitlement to tolling. But in addition to disregarding how *American Pipe* tolling is supposed to work, that argument runs aground on *Harris*'s actual record. In *Harris*, the district court, the plaintiffs, and even Union Pacific *itself* repeatedly recognized that the class included Mr. Zaragoza and others like him up until the moment it was decertified. Under *American Pipe*, Mr. Zaragoza's claims were therefore unequivocally tolled.

Alternatively, Union Pacific invites this court to resolve various merits issues in its favor despite the district court never having had a chance to pass on them. But these issues involve complex factual disputes. As a court of review, not of first view, this Court should leave those questions for the district court to consider in the first instance.

## ARGUMENT

### I.    Mr. Zaragoza should not be deprived of *American Pipe* tolling on the grounds that the *Harris* class was narrowed.

The principles articulated by the Supreme Court in *American Pipe* dictate that the filing of the *Harris* action tolled the statute of limitations for Mr. Zaragoza's disparate-treatment and disparate-impact claims. That is because the filing of that action did exactly what a statute of limitations is supposed to do: It gave Union Pacific notice "not only of the substantive claims being brought against [it], but also of the number and generic identities of the potential plaintiffs" whose claims it could face. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974). There was, as a result, no legitimate reason to enforce the statute of limitations against any of the *Harris* class members. As the Supreme Court has explained, tolling the limitations period under these circumstances spares the judicial system the "unnecessary filing of repetitious papers and motions" that Rule 23 was meant to avoid, *id.* at 550, by "encourag[ing] class members to rely on the named plaintiffs to press their claims" rather than make their own protective filings, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–53 (1983).[1]

Over the course of the *Harris* litigation, nothing happened to disturb these basic facts. To the contrary, time and again, the parties treated Mr. Zaragoza and

---

[1] Unless otherwise noted, internal quotation marks, citations, and brackets are omitted from quotations throughout the brief.

others just like him as members of the *Harris* class. For instance, the federal district court presiding over the class litigation informed Mr. Zaragoza that a list with his name on it was a "class list." *See Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 624, 627–28 & n.3 (D. Neb. 2019). The court also specifically identified the *Harris* plaintiffs' class-certification declarants, including three who were situated just like Mr. Zaragoza, as individuals who experienced the discrimination the certified class alleged. *Id.*; *see* ROA.2782-84, 2826-28, 2862-64. And Union Pacific itself adopted the same understanding in its own briefs. *See* ROA.3080, 3095, 3116-19, 3129-30, 3140-42.

To escape the straightforward conclusion that these events entitle Mr. Zaragoza to tolling, Union Pacific does not engage with the core principles articulated in *American Pipe*. Instead, it argues that even if Mr. Zaragoza was entitled to *American Pipe* tolling *initially*, he lost that tolling when the *Harris* plaintiffs moved for class certification—because he should have known that slight changes in the phrasing of the class definition excluded him. That argument is wrong four times over. *First*, it ignores the logic behind *American Pipe* tolling. *Second*, it lacks support in the case law of this or any other circuit. *Third*, it misapprehends the record, which illustrates that everyone in *Harris* understood perfectly well that people like Mr. Zaragoza remained members of the *Harris* class throughout the litigation. And *fourth*, it misconstrues the proposed class definition, which encompassed Mr. Zaragoza.

**A.** As an initial matter, by skating past what the parties to the *Harris* litigation actually thought and focusing instead (at 29–33) on technical arguments about the meaning of the class-certification definition, Union Pacific loses sight of the basic equities of *American Pipe* tolling. As we explained in the opening brief (at 38–39), tolling does not turn on the fine nuances lawyerly ears might discern in different formulations of a class definition. It's supposed to extend to "all those who *might* subsequently participate" in a suit, *Am. Pipe*, 414 U.S. at 551 (emphasis added), and to entitle them to "rely on the named plaintiffs to press their claims" so as to spare the litigation system from a multitude of protective filings, *Crown, Cork*, 462 U.S. at 352–53.

In focusing on the class definition in the abstract, Union Pacific's approach makes those goals all but impossible. Under the company's view of *American Pipe* tolling, even a class member whose name appeared on a "class list," and who observed that similarly-situated people had been identified *by name* as class members in various court filings, could not be confident that they were entitled to tolling. *See Harris*, 329 F.R.D. at 624, 627–28 & n.3. After all, some later district court might decide that a previously unexamined nuance in a class definition in fact excludes them from the class and thus from tolling too. Union Pacific's rule therefore compels assiduous plaintiffs' counsel to file protective filings for almost any class member, thereby

undermining the very efficiencies *American Pipe* was supposed to protect. *See Am. Pipe*, 414 U.S. at 550.

Union Pacific doesn't even attempt to explain how an account of *American Pipe* tolling that requires a plaintiff to monitor a proposed class for barely perceptible changes, carefully parse their meaning, and go so far as to *affirmatively disregard* statements that they remain class members could be reconciled with the ends the Supreme Court has said the doctrine serves.

**B.** Instead, the company largely sets aside the reasoning and purpose of *American Pipe* tolling. It asks the Court (at 26–28) to follow two out-of-circuit cases that, it argues, stand for the broad principle that anytime a motion for class certification articulates a class definition that is in some way narrower than the definition in the initial complaint, tolling ceases for those not covered by the updated definition. *See Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 253 (10th Cir. 1994); *Smith v. Pennington*, 352 F.3d 884, 891–94 (4th Cir. 2003). But neither case actually articulates that rule.

Rather, in both, the initial scope of the class was unclear, and the class-certification motion only clarified who was in the class in the first place. In *Sawtell*, for instance, a medical-device class action was filed in Minnesota, and the plaintiffs moved for certification of a class consisting solely of "persons who received the implants in Minnesota." 22 F.3d at 253. Although the initial complaint did not *explicitly*

5

specify that the class was limited to Minnesotans, the Tenth Circuit court held that that was what it had meant and explained that the subsequent certification order simply clarified as much. *Id.* And when the Ninth Circuit later cited *Sawtell*, it did so only for the principle that tolling applies to those who were initially "asserted class members" and not to a later "expand[ed]" class. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 936 (9th Cir. 1996). Meanwhile, Union Pacific's other case, *Smith*, took a similar tack as *Sawtell*: It explained that the class-certification motion there unambiguously clarified a previously "uncertain[]" initial description. 352 F.3d at 891.

Indeed, far from endorsing Union Pacific's view that district courts are entitled to apply a fine-toothed comb to a class definition, *Smith* rejects that very approach. As it explains, the scope of tolling turns on whom *the parties themselves* treated as belonging to the class, as gleaned from evidence of their dealings and "assumption[s]"—not on whom some later district court thinks the definition encompasses. *See Smith*, 352 F.3d at 891–93 (considering "evidence outside of the complaint" that demonstrated what class the plaintiff "desired to have certified" and who the parties had "assum[ed]" was in the class). For good reason. As we explained above, that approach best accords with the basic principles of *American Pipe* tolling: It focuses on whether the parties themselves had fair notice of the "substantive claims and the number and generic identities of the potential plaintiffs that might

participate in the judgment." *Id.* at 893. And it avoids penalizing unsuspecting class members for relying on those understandings.[2]

Unable to find cases to support its argument, Union Pacific protests (at 33–34) that "the cases on which Zaragoza relies" are factually distinguishable because those cases did not involve a dispute over whether a plaintiff was covered by a "narrowed class definition." But that argument simply misses (or ignores) the cases' significance. Mr. Zaragoza's argument is not that the cases he cited are on all fours with the facts here; rather, the cases show the widespread understanding that *American Pipe* expressly anticipates its tolling rule applies even where there could be some ambiguity in the contours of a class.

**C.** In any event, even if the unambiguous narrowing of the set of people who belonged to a class could deprive a plaintiff of *American Pipe* tolling, that did not happen here. As we detailed in the opening brief (at 28–34), the *Harris* class was never narrowed to exclude employees like Mr. Zaragoza. To the contrary, everyone in *Harris*—the plaintiffs, the federal court, and Union Pacific itself—repeatedly acknowledged their inclusion. *See* Opening Br. 28–30, 32–33.

---

[2] As to the question of notice, Union Pacific seems to suggest (at 29) that a narrowing of a class definition could lead a defendant to believe that it no longer faced claims from a particular set of plaintiffs. But even if that were so, the record makes explicit that was not the case here: Union Pacific's own statements in the Eighth Circuit demonstrated that it continued to recognize, up until the class was decertified, that Mr. Zaragoza was part of the class. *See, e.g.*, ROA. 3080, 3095, 3116-19, 3122, 3140-42.

In arguing otherwise, Union Pacific barely engages with the opening brief's detailed account of how, in *Harris*, all parties acknowledged that Mr. Zaragoza was part of the class. At most, it quibbles with two points: whether the company called the list of employees it produced a "class list" before the class was certified, and which part of the *Harris* district court's opinion described the declarants as class members.

Start with what Union Pacific does not contest. As to the "class list," it does not dispute (at 38) that the *Harris* district court referred to the list of employees on the spreadsheets the company produced during discovery—which included Mr. Zaragoza—as the "class list." *Harris*, 329 F.R.D. at 624, 627–28; ROA.2926, 3080, 3122. It also does not dispute that Union Pacific itself then adopted the same understanding, after the district court certified the class, when the company sought to have the class decertified. ROA.3080 (Union Pacific describing the certified class to the Eighth Circuit as composed of that same group of "more than 7,000 current and former Union Pacific employees"); ROA.3108 (similar). That gives away the game. *American Pipe* tolling applies to all those who *might* subsequently participate in a suit—which, here, means it applies to every current and former Union Pacific employee on the produced lists, Mr. Zaragoza included.

In an attempt to avoid this straightforward conclusion, the company zeroes in (at 37) on its own description of the list when it was first produced, emphasizing that it did not then characterize the spreadsheet as a "class list." But the statements Union

Pacific cites on this score were made prior to the district court's 2019 class-certification order. *Harris*, 329 F.R.D. at 627–28. So even if Union Pacific initially disputed that point, once the district court determined that Union Pacific's list would be the "class list," Union Pacific fell in line. In multiple briefs to the Eighth Circuit, Union Pacific followed the district court in recognizing that the spreadsheet it had produced was a list of class members. *See* ROA.3080 (Union Pacific agreeing that the certified class comprised that same group of "more than 7,000 current and former Union Pacific employees"); ROA.3108 (similar).[3]

Alternatively, Union Pacific argues (at 37–38) that its spreadsheet could not be the class list because it was "produced before the *Harris* motion for class certification narrowed the class definition." But that argument also doesn't hold up: When the district court designated the produced list as the "class list" it specifically did so for the class definition it certified. *Harris*, 329 F.R.D. at 621, 627–28.

So the company makes one last try, asserting (at 38) that the *Harris* court did not actually make a finding that the employees on the list were class members. But

---

[3] The letter Union Pacific cites in passing suffers from the same problem: It was from May 9, 2018—nine months before the district court and the parties recognized the produced spreadsheet as a class list. Response Br. 37 (citing ROA.3344); *Harris*, 329 F.R.D. 616. Nor is the district court case that the company cites (at 37) any more helpful—that case did not confront the tolling issue at all, let alone the evidence concerning the parties' understanding of the class list at the time of class certification. *See Owen v. Union Pac. R.R. Co.*, 2020 WL 6684504, at *5–6 & n.2 (D. Neb. Nov. 12, 2020) (explaining that the court did not address tolling because Union Pacific did "not press the timeliness issue").

Union Pacific does not explain what else the court could have meant when it described the list as a "class list" and explicitly approved the sending of class notice to everyone who appeared on it. *Harris*, 329 F.R.D. at 624, 627–28; *id.* ("approv[ing]" the sending of notice to Union Pacific's entire 7,723-person "class list").

Union Pacific's attempt to discount the *Harris* declarations suffers from a similar flaw. There too, the company disputes (at 36) whether the *Harris* district court actually found each of the declarants—including the three employees who had the same experience as Mr. Zaragoza—to be members of the class. But on the very next page of its brief, the company admits that "the *Harris* court[] descri[bed] the declarants as 'class members.'" Response Br. 36. And that is because the court expressly found that they were: The declarants, it explained, had "experienced the discrimination alleged" by the class representatives. *Harris*, 329 F.R.D. at 624 & n.3.

Unable to explain away these statements, Union Pacific parrots the district court's assertion that "[i]t would be absurd to read the court's passing reference to the declarations as" a determination that they were part of the class. Response Br. 36 (quoting ROA.3428). But the *Harris* court did not just make a "passing reference" to the declarants' status as class members. Rather, the determination that they were class members was key to its class certification ruling. That is because the court's conclusion that the named plaintiffs satisfied Rule 23(a)'s adequacy requirement was explicitly premised on a comparison between the named plaintiffs and "the 44 class

members" who had submitted declarations. *See Harris*, 329 F.R.D. at 624. It was precisely because the named plaintiffs and the declarants' interests were aligned, and so the named plaintiffs could adequately represent "the putative class members," that the court was willing to certify the class. *Id.*

Finally, it is particularly ironic for Union Pacific to argue that the declarants were not class members when the company itself specifically cited their declarations as "illustrat[ions]" of the workers in the class. *See* ROA.3129-30, 3141-42. Union Pacific even argued on appeal that the class was overbroad precisely because of the inclusion of two declarants that had the same experience as Mr. Zaragoza. ROA.2782-83, 2826-28, 3095, 3141-42.

Union Pacific can't have its cake and eat it too. It used the fact that the *Harris* class included the 7,000-plus employees it had identified, together with the declarations of workers similarly situated to Mr. Zaragoza, to support its argument in the Eighth Circuit that the class was overly broad and therefore should be decertified. The company cannot, in good faith, turn around and now argue that those very same workers were actually excluded from the class just because that assertion will now help it here.

**D.** It is unsurprising that Mr. Zaragoza was recognized as a class member throughout the *Harris* litigation. By its terms, he satisfied the definition of the certified class. *See Harris*, 329 F.R.D. at 628 (certifying class as "[a]ll individuals who have been

or will be subject to a fitness-for-duty examination as a result of a reportable health event"). One of the "conditions" Union Pacific treated as a "reportable health event" was a "recent event" in "color vision" acuity—the very problem the Ishihara test was meant to detect. ROA.145-46. And Mr. Zaragoza experienced such a "reportable health event" when he failed the Ishihara test, signifying a possible vision deficiency—which then "triggered a Fitness-for-Duty evaluation." *See* ROA.16 (Mr. Zaragoza stating that failing his Ishihara test "triggered a Fitness-for-Duty evaluation").

On appeal, Union Pacific recognizes (at 31) that a "reportable health event" could be "discover[ed]" during a Federal Railroad Administration (FRA) certification exam like the Ishihara test—and it concedes that the failure of such a test could "trigger" a fitness-for-duty evaluation. To nevertheless avoid the conclusion that Mr. Zaragoza fit the class definition, it tries two arguments. *First*, it says (at 32) that having "an initial" "fitness-for-duty evaluation" after a failed medical exam is not enough to make an employee a member of the class. Rather, the company argues, after that "initial" "fitness-for-duty evaluation," there must be a "*subsequent*" "fitness-for-duty evaluation" to satisfy the class definition. Response Br. 32 (emphasis added). But Union Pacific points to nothing in the class definition or *Harris* record to support such a requirement.

*Second*, the company adopts (at 31–32) the district court's suggestion that Mr. Zaragoza's failed test shouldn't count as a reportable health event because it did not identify a *change* in Mr. Zaragoza's vision. But, as we explained in the opening brief (at 33–35), that assertion conflicts with how Union Pacific has long treated the definition of a "reportable health event." For example, Union Pacific has never disputed that the very first named plaintiff in the *Harris* action, Mr. Harris, was a class member despite experiencing no "change" in the epilepsy that triggered his fitness-for-duty evaluation. *See* ROA.110-11.

Moreover, Union Pacific itself described Mr. Zaragoza as a worker who met the basic parameters of the class definition—that is, who was "subject to a Fitness for Duty Evaluation related to a reportable health event." ROA.1881, 1931-32 (including Mr. Zaragoza on a list of employees specifically limited by that description).[4] Indeed, the reason the plaintiffs adopted the "reportable health event" language in the first place was because Union Pacific suggested it described Mr. Zaragoza's experience and that of others like him. ROA.1931-32; *see* Opening Br. 9–11, 28.[5]

---

[4] As we noted in the opening brief (at 34), and Union Pacific does not dispute, the parties in *Harris* understood "related to" and "as a result of" as equivalent. *Compare* Counsel Letter on Interrogatories at 2–4, *Harris v. Union Pac. R.R. Co.*, No. 8:16-cv-381 (D. Neb. Feb. 5, 2019), ECF No. 215-4, *with* ROA.1916, 1931-32.

[5] Union Pacific asserts (at 31–32) that the argument that Mr. Zaragoza experienced a change in vision conflicts with his argument below that no change in condition is required under Union Pacific's reportable health events policy. But there

In sum, in failing the Ishihara test, Mr. Zaragoza experienced a "reportable health event," regardless of whether he documented a specific vision change, and he was sent to a fitness-for-duty evaluation as a result. He therefore fell squarely within the *Harris* proposed class definition.

## II.    Union Pacific's merits arguments are best left to the district court on remand, but in any event, they fail.

In a final bid to rehabilitate the district court's judgment, Union Pacific asks this Court to affirm its decision by embracing various merits arguments that the district court never addressed. But because this Court is one of "review, not first view," it should reject the invitation to decide those issues in the first instance. *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017). "Given that the district court did not reach [the merits of the] claim, the normal course would be to remand for the district court to do so." *Id.* That approach holds particular value in a case like this one, where the issues Union Pacific raises require the Court to finely parse a "fact intensive" summary-judgment record. *See, e.g.*, *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 366 (5th Cir. 2023). There is no good reason for the Court to deviate from its standard practice here, nor does Union Pacific attempt to provide any.

---

is no conflict: Mr. Zaragoza's point is simply that, if a change is required, Union Pacific treated him as experiencing one.

But even if the Court were to weigh in, Union Pacific isn't entitled to summary judgment on either of Mr. Zaragoza's claims. As to disparate treatment, Union Pacific is wrong in two respects. *First*, its complaint (at 39–40) that Mr. Zaragoza failed to properly provide direct evidence of discrimination gets the law wrong. Where a company engaged in facial discrimination, a plaintiff does not need to prove *why* the company decided to treat employees differently on the basis of their disability. *Second*, Union Pacific's argument (at 41–49) that Mr. Zaragoza was not a "qualified" individual for purposes of his conductor job requires a highly intensive factual inquiry that is properly for the jury. Union Pacific's arguments on disparate impact reprise that problem—and they misread the plain text of the ADA.

## A. Union Pacific isn't entitled to summary judgment on Mr. Zaragoza's disparate-treatment claim.

**1.** Union Pacific is not entitled to summary judgment on the ground that Mr. Zaragoza failed to "prove[]" that Union Pacific was motivated by "discriminatory animus." Response Br. 39. Antidiscrimination law has never required a showing of animus or "ill-will" toward a protected group. *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 480 (5th Cir. 2006) ("Because we are concerned under the ADA with animus directed at the disability, and not necessarily with animus directed at the individual, it is of no moment that [the defendant] harbors no ill-will towards [members of the protected group]."). Rather, "explicit facial discrimination" amounts to intentional discrimination by definition—regardless of the reasons *why* a

defendant decided to take a protected characteristic into account. *AT & T Corp. v. Hulteen*, 556 U.S. 701, 711 (2009) ("[E]xplicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination, and . . . such facial discrimination is intentional discrimination even if not based on any underlying malevolence.").

Employing a facially discriminatory qualification standard, such as one evidenced by a "statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020); *see also, e.g., Doe v. Cnty. of Ctr., PA*, 242 F.3d 437, 447 (3d Cir. 2001) (a policy treating the plaintiffs differently "solely on the basis of [] HIV and AIDS . . . [a]s a facial matter . . . constitutes disability discrimination"); *Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n*, 459 F.3d 676, 694 (6th Cir. 2006) (disparate treatment claims premised on facial classifications "impose[] no requirement [] to show [] an evil, discriminatory motive"); *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 995 (10th Cir. 2019) (evidence of a facially discriminatory policy constitutes direct evidence of disparate treatment); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 112 (1985) ("[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."). And that is precisely what

happened here: Union Pacific decided that Mr. Zaragoza suffered from a "color vision deficit," and it removed him from service on that basis. ROA.16-17, 1557-58.[6]

**2.** Union Pacific's second argument on the merits (at 41–49) fares no better. Union Pacific is not entitled to summary judgment on the ground that Mr. Zaragoza is not a "qualified individual" for purposes of the Americans with Disabilities Act. *See* Response Br. 41. The "qualified individual" inquiry asks whether the plaintiff is an individual who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 730 (5th Cir. 2007). And here, Mr. Zaragoza created ample issues of material fact on this question, introducing evidence that he performed his job without missing a signal for ten years and was able to pass tests involving real railroad wayside signals without issue. *See* ROA.517-18, 1135-42, 1556-57, 1752, 3398.

Union Pacific insists that Mr. Zaragoza was not qualified because he failed to pass the Light Cannon test. But failing to pass such a test does not mean that a

---

[6] None of Union Pacific's cases (at 40) warrant a different result. Unlike Mr. Zaragoza, the plaintiffs in those cases failed to point to any statement that they were fired because of their disability. *See Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir 2020) (terminating someone for "arriving to work under the influence of alcohol is not equivalent to firing" them for being an alcoholic); *Clark*, 952 F.3d at 580–81 (finding no direct evidence linking the plaintiff's "disability to a decisionmaker's choice to terminate him" because the plaintiff was fired for falling asleep at his desk, not for his alleged impairment, diabetes); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019) (finding no direct evidence where statements by employer did not show that plaintiff's condition "was the reason why" he was terminated).

plaintiff lacks the capacity to perform the essential functions of their job. It means only that he cannot pass a "qualification standard[]"—a "personal [or] professional attribute[]," such as a physical, mental, or safety requirement imposed *by the employer* for the position. *Atkins v. Salazar*, 677 F.3d 667, 675 n.12 (5th Cir. 2011). "The [ADA] does not require that a person meet each of an employer's established qualification standards, however, to show that he is qualified." *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc); *see also, e.g.*, *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78 (2002) ("The statutory definition of discrimination covers a number of things an employer might do to block a disabled person from advancing in the workplace, such as using qualification standards that screen out or tend to screen out an individual with a disability."); *Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 430 (6th Cir. 1999) ("[O]nce [a] disabled individual contends that a particular job requirement is unessential, the burden shifts to the employer to prove that the challenged requirement is necessary."). "[I]ndeed, it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge." *Bates*, 511 F.3d at 990.

That's why, "[o]nce an employee shows that a qualification standard tends to screen out an individual with a disability, the employer shoulders the burden of proving that the challenged standard" is required as a matter of business necessity, a

showing that, at summary judgment, requires it to "affirmative[ly]" demonstrate that no "rational trier of fact [could] find" other than for the defendant on that defense. *Atkins*, 677 F.3d at 678, 681; *see also, e.g.*, *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1035 (8th Cir. 2020). To make out such a defense, then, Union Pacific had to show not only (1) that a jury would be compelled to conclude that its Light Cannon test was "linked to the employee's ability to perform the essential functions of the job," but also (2) that the standard "substantially promote[d] the business's needs," and (3) that a "reasonable accommodation" could not accomplish the same thing. *Atkins*, 677 F.3d at 682–83 (citing *Bates*, 511 F.3d at 996).

Union Pacific met none of those elements here. As to the first, Mr. Zaragoza raised serious questions for the jury as to whether the Light Cannon test accurately measured ability. Among other things, he introduced evidence that (1) the test was not validated, as Federal Railroad Administration regulations require, *see* ROA.1640, 1644, that (2) the test did not qualify as a field test, and thus was required to be subjected to peer-reviewed study, *see* ROA.1637, and (3) that the test had serious accuracy problems, with a 26.5% rate of failure even among subjects with no color-vision deficiency, ROA.1421. Nor would a jury be compelled to find for Union Pacific on the second or third elements of its defense. Union Pacific did not even attempt to show "the necessity of the particular [criteria] that it used in the evaluation," *Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 863 (9th Cir. 2009), and

19

it offered no evidence at all to support the contention that no reasonable accommodation could be made.

Against all this, Union Pacific's primary defense of the Light Cannon test is that it is required by federal law. But that is not true. The Federal Railroad Administration requires color-vision testing as part of conductor certification, but it leaves the matter of test selection to railroads. *See* 49 C.F.R. § 242.117(h)(3). What's more, the FRA establishes minimum validation standards for those tests, and the plaintiffs introduced evidence that the Light Cannon test fell well below those standards—including the fact that Union Pacific's own specialists recommended that its test was not ready to be implemented and needed to undergo further evaluation. *See, e.g.*, ROA.1390-91, 1413-14.[7] So, here, the FRA never directed Union Pacific to implement the Light Cannon test specifically; it was Union Pacific's choice to create and apply a test that improperly barred Mr. Zaragoza from performing his job.

---

[7] And no federal agency has held otherwise. Union Pacific points (at 48–49) to language within the decisions of two FRA review boards that the company construes as approving the Light Cannon test. But the boards simply stated, in passing, that the test was adequate for the specific purposes before them, and neither supplied scientific, operational, or technical evidence to justify its positive assessment of the Light Cannon. *See* ROA.920, 927. Regardless, review boards' decisions are explicitly "not precedential." 49 C.F.R. §§ 240.409(u)(5), 242.509(u)(5). The Light Cannon test thus differs from the DOT regulations in the case Union Pacific relies on, *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555 (1999), which, as the company acknowledges (at 44), involved federal regulations that "*required* the employer to take an adverse action."

**B.    Union Pacific isn't entitled to summary judgment on Mr. Zaragoza's disparate-impact claim.**

Union Pacific's last-ditch attempt to secure summary-judgment on Mr. Zaragoza's disparate-impact claim is just as flawed. We have just explained why there are issues of material fact on the question whether Mr. Zaragoza was a qualified individual under the ADA, and on the question whether Union Pacific was entitled to a business necessity defense. *See supra* pages 17–20. Union Pacific's only other argument (at 50) is that a disparate-impact claim must be premised on an "actual disability" rather than merely an impairment that a person is "regarded as" having. But the company cites nothing in support of this novel rule, and it makes no sense: The ADA defines disability as "an actual *or perceived* physical or mental impairment," and it applies that same definition across the chapter, without distinguishing between different types of claims. *See* 42 U.S.C. § 12102 (emphasis added); *A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 365 (4th Cir. 2008) (explaining that "the district court's ruling" that the plaintiff had established disability under the ADA's "regarded as" prong "provided a necessary element of the [plaintiff's] disparate impact claim *and* its intentional discrimination claim").

\* \* \*

Mr. Zaragoza thus provided ample evidence for a jury to find for him. Parsing the complicated and fact-bound questions that that evidence presents should be left to the jury. Yet there is no need for this Court to weigh in on Union Pacific's merits

arguments at all. Instead, it should remand for the district court to pass on these arguments in the first instance.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

*/s/ Matthew W.H. Wessler*
MATTHEW W.H. WESSLER
LINNET R. DAVIS-STERMITZ
Gupta Wessler LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*matt@guptawessler.com*

Jessica Garland
Gupta Wessler LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336

James H. Kaster
Lucas J. Kaster
Nichols Kaster, PLLP
4700 IDS Center
80 South 8th St.
Minneapolis, MN 55402
(612) 256-3200

September 1, 2023                    *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Matthew W.H. Wessler*
Matthew W.H. Wessler

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,509 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

September 1, 2023                          */s/ Matthew W.H. Wessler*
                                           Matthew W.H. Wessler